October and November Term, 1881, No. 161.

# Birmingham and Elizabeth Turnpike Road *versus* The Commonwealth.

1. A turnpike company was incorporated under acts providing that, in case the company did not keep the road in perfect order and repair, said fact having been first found by inquisition, the right of the company to collect tolls should cease, till the road had been put into good repair: *Held,* that such acts were for aggrieved individuals, and that the remedy of the Commonwealth by *quo warranto* remained intact.

2. The Act of 21st March, 1806 (P. L. 558), does not apply to such case.

3. Evidence that the revenue of the said road was not sufficient to keep it in repair, was properly excluded from the jury.

Error to Court of Common Pleas, No. 1, of *Allegheny County.*

This was a proceeding by *quo warranto* to try the title of the defendants to exercise the rights and franchises of a corporation.

The Commonwealth filed an information, setting forth the act of incorporation of defendant, dated March 31st 1836, authorizing the defendant to make a turnpike road between points therein mentioned, and averring, *inter alia,* as follows:

"3. That pursuant to said authority said corporation was organized and constructed the road mentioned in said act of

[Birmingham and Elizabeth Turnpike Road *v.* Commonwealth.]

Assembly, and for many years maintained the same in reasonably good order and repair, and during said time took tolls thereon, from persons passing thereover with their vehicles.

"4. That about ten years ago said company permitted said road to get out of repair and ceased to do work thereon of any benefit, so that the same became during certain seasons of the year well-nigh impassable; that from said time until the present, during each and every fall, winter, and spring, when said road was in such bad order, condition, and repair as aforesaid, the said company permitted the toll-gates thereon to be thrown down and open, and ceased to take toll from passengers over said road, but in the summer-time, when by reason of good weather said road became again passable, would re-erect the toll-gates thereon and refuse to permit passage thereon, unless upon the full payment of tolls.

"6. That although frequently notified of the said bad condition of said road, and requested to repair the same, the said corporation has declined and refused to repair said road, and to maintain it in good, or even reasonably fair condition, and although totally abandoning it during the fall, winter, and spring of each year, have uniformly insisted during the summer season upon taking toll for passage thereon, and have refused to permit the public to travel thereover without the payment of tolls.

"7. And it is further charged and averred that for ten years last past, by reason of the wilful and persistent neglect of said corporation to repair and maintain said road, the same has been a public nuisance, and the source of damage and loss to all persons and parties whose business require them to travel over the same, and that said road now remains in said condition and is now a public nuisance and source of damage as aforesaid.

"8. That not only has said corporation, by reason of its abandonment for a large portion of the year during each and every year for ten years last past of its right to take tolls, lost said right, but in addition thereto, it has, as is now averred, by wilful misuse and abuse of its franchises forfeited its right to be a corporation and to take tolls upon said road."

And praying the Court to grant a writ, to be served upon the said the President, Managers, and Company of the Birmingham and Elizabethtown Turnpike Road, commanding them to be and appear in your Honorable Court at a time therein fixed, to show cause why they claim to exercise the right and franchises of a corporation.

The respondents in their answer denied that they had

[Birmingham and Elizabeth Turnpike Road *v.* Commonwealth.]

ceased to do work on the road, but they admitted " that at certain periods of the year, that is to say, from late in the fall until early spring, or between the middle of April and 1st of May, or thereabouts, the said road did become comparatively in a bad condition, owing to the loamy condition of the ground and the influence of rain and frost, and while said road was in such condition the gate or gates were allowed to be and remain open, and the collection of tolls suspended until said road was restored to a good and suitable condition for the public using the same.

" 3d. And further answering say, that the tolls collected for about ten years past, averaged about eight hundred dollars annually, all of which, save so much thereof as were paid to collectors, and applied to necessary incidental expenses, were applied, according to the best judgment of respondents, in repairing and maintaining said road, so that said road was, during the greater part of each year, in a reasonably good and safe condition, and was prevented, by means thereof, from falling, during the winter and early spring, into a much worse condition.

    *        *        *        *        *  .

" 8th. And further answering say, that said Commonwealth, by reason of any of the matters or things charged in said suggestion and not herein traversed or denied, ought not to have or maintain said writ of *quo warranto,* and is not in law or equity entitled to a decree of forfeiture of any rights, privileges, or franchises of said company, or of its corporate existence ; for that they say that by an act of Assembly of this Commonwealth, entitled ' An act authorizing the governor to incorporate a company for making an artificial road from the bank of the river Susquehanna, opposite the borough of Harrisburgh to Pittsburgh,' approved the 24th day of February, one thousand eight hundred and six, it is provided by section 14th, *inter alia,* in substance, that in case said company shall neglect to keep said road in perfect order and repair, said fact being first found by inquisition, as therein provided, the right of said company to demand or collect tolls shall cease until said road shall be put in good and perfect order and repair, as will more fully appear by reference to said act. And that by a supplement to the foregoing act, approved the ninth day of March, eighteen hundred and fourteen, section seven, incorporating ' The President, Managers, and Company of the Greensburg and Pittsburgh Turnpike Road Company,' it is therein provided that the said company ' shall have and possess all the privileges, authorities, and powers, and be subject to all the du-

[Birmingham and Elizabeth Turnpike Road *v.* Commonwealth.]

ties, qualifications, penalties, and restrictions, as are given and granted by the act to which this is supplementary,' as by reference thereto will more fully appear. And that by an act of Assembly, approved the thirty-first day of March, eighteen hundred and thirty-six, incorporating said defendant company, it is provided that said company shall have like powers, authorities, and privileges, and be subject to all the duties, qualifications, restrictions, penalties, fines, and forfeitures, and be entitled to like tolls and profits, in proportion to the distance, as are given and granted to the President, Managers, and Company of the Pittsburgh and Greensburg Turnpike Company by the several acts of this Commonwealth; wherefore the said defendant company prays that it may be dismissed and discharged by the Court hereof and from the premises charged in said suggestion."

The Commonwealth demurred to the eighth paragraph of the answer, and joined issue as to the residue.

On the trial the respondents presented the following points:

"1. The acts of Assembly of Pennsylvania under which the Birmingham and Elizabeth Turnpike Company is incorporated, and the general laws of the State having provided a remedy for the matters complained of in this case, which remedy is exclusive, there can be no recovery by the Commonwealth in this proceeding.  Answer refused.

"2. That under the pleadings there can be no verdict for the Commonwealth.  Answer refused."

They also offered evidence that they had employed men during the summer to keep the road in as good condition as the revenues of the company would permit, and had expended all tolls and receipts on the road. This evidence was excluded.

Verdict for the Commonwealth and judgment thereon that the corporation defendant be dissolved and its charter forfeited; that it be ousted and altogether excluded from its franchises, powers, and privileges, and that the Commonwealth recover costs.

The respondent took a writ of error, assigning for error the sustaining of the demurrer to the eighth paragraph of the answer, the exclusion of the above evidence, and the manner and form of entering judgment on the verdict.

The act of February 24th, 1806, § 14 (P. L., page 349), is as follows:

"And be it further enacted by the authority aforesaid, That if the said company shall neglect to keep the said road in good and perfect order and repair for the space of fifteen days, and information thereof shall be given to any justice of the peace of the proper county, such justice shall issue a

[Birmingham and Elizabeth Turnpike Road *v.* Commonwealth.]

precept, to be directed to the constable, commanding him to summon three judicious freeholders, to meet at a certain time, in the said precept to be mentioned, at the place in the said road complained of; of which meeting notice shall be given to the keeper of the gates or turnpikes between which the defective place is, and the said justice shall at such time and place, by the oath and affirmation of the said freeholders, inquire whether the said road or any part thereof, is in such good and perfect order and repair as aforesaid, and shall cause an inquisition to be made under the hands and seals of himself and a majority of the said freeholders; and if the said road shall be found by the said inquisition to be out of order and repair, according to the true intent and meaning of this act, he shall certify and send one copy of the said inquisition to each of the keepers of the turnpikes or gates between which such defective place shall be, and from thenceforth the tolls hereby granted to be collected at such turnpikes or gates, for the intermediate distance between them, shall cease to be demanded, paid or collected, until the said defective part or parts of the said road shall be put into good and perfect order and repair as aforesaid; but if the same shall not be put into good and perfect order and repair before the next Court of Quarter Sessions of the proper county the said justice shall certify and send a copy of the said inquisition to the justices of the said Court, and the said Court shall thereupon cause a process to issue and bring in the bodies of the person or persons intrusted by the company with the care and superintendence of such part of said road as shall be found defective as aforesaid, and shall direct a bill of indictment to be sent to the grand inquest against the person or persons intrusted as aforesaid, and upon conviction shall give such judgment according to the nature and aggravation of the neglect, as the said Court in their discretion shall judge proper. *Provided*, The fine in no instance shall be less than ten dollars nor exceeding one hundred dollars, and the fine so imposed shall be recovered in the same manner as fines for misdemeanors are usually recovered in the said counties, and shall be paid to the supervisors of the highways of the place where the offence was committed, to be appropriated to repairing such highways as the township or county is bound to repair at the public expense thereof."

The act of March 21st, 1806 (P. L., p. 569, § 13), is as follows: "In all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any act or acts of Assembly of the Commonwealth, the directions of the act shall be strictly pursued, and no penalty shall be inflicted or anything done agreeably to the provisions of the common law

[Euwer *v.* Henderson.]

in such cases further than shall be necessary for carrying such act or acts into effect."

*Thomas C. Lazear* and *S. Schoyer, Jr.,* for plaintiffs in error.

The remedy given by the act of February, 1806, is exclusive under the act of March 21st, 1806. Koch *v.* Water Company, 15 P. F. Smith, 288 ; Commonwealth *v.* Capp, 12 Wright, 53 ; R. R. Co. *v.* McLanahan, 9 P. F. Smith, 23.

The common-law rule is that a special remedy, given by statute, is exclusive. Commonwealth *v.* Leech, 8 Wright, 332 ; Shaeffer *v.* Jack, 14 S. & R., 426 ; Dunn *v.* Commonwealth, Ibid., 431 ; High on Extraordinary Remedies, §§ 16, 617, 649.

*W. B. Rodgers* and *D. T. Watson* for appellee.

NOVEMBER 21ST, 1881.—BY THE COURT : The remedies provided for in the charter were for aggrieved individuals, and the remedy of the Commonwealth by *quo warranto* was intact. It is not a case, therefore, in which the act of 21st March, 1806, has any application. It certainly was no answer that the revenue derived from the road was not sufficient to keep it in repair. There was, therefore, no error in the rulings of the learned Court, and the judgment of ouster was entirely right.

Judgment affirmed.